# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS L. WALKER,<br>CDCR #AP-8080,<br><br>Plaintiff,<br><br>vs.<br><br>DONOVAN STATE PRISON, et al.<br><br>Defendants. | Case No.: 3:18-cv-02517-AJB-NLS<br><br>**ORDER:**<br><br>**1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 3]**<br><br>**AND**<br><br>**2) DISMISSING COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2) AND 28 U.S.C. § 1915A(b)** |

Nicholas L. Walker ("Plaintiff"), a prisoner incarcerated at Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, and proceeding pro se, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983. Plaintiff claims RJD, Correctional Officer Furguson, and several other unidentified RJD correctional and transportation officers and nurses violated his Eighth Amendment rights in September 2018, after he was attacked by another inmate who broke his jaw. (*See* Compl., ECF No. 1 at 2-4.)

Plaintiff did not prepay the filing fee required by 28 U.S.C. § 1914(a) to commence a civil action at the time he filed his Complaint; instead, he has filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a). (*See* ECF No. 3.)

## I.    Motion to Proceed In Forma Pauperis

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook,* 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, __ S. Ct. __, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for ... the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the

---

[1]  In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

In support of his IFP Motion, Plaintiff has submitted a copy of his CDCR Inmate Statement Report, as well as a Prison Certificate issued by a RJD trust accounting official which attests as to his balances and deposits over the 6-month period preceding the filing of his Complaint. *See* ECF No. 3; ECF No. 4 at 1-4; 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. These statements show Plaintiff has carried an average monthly balance of $201.68, had an average monthly deposit of $167.90 credited to his account over the 6-month period immediately preceding the filing of his Complaint, and an available balance of $60.90 on the books at the time of filing. *See* ECF No. 4 at 1, 3.

Therefore, the Court **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 3) and assesses his initial partial filing fee to be $40.33 pursuant to 28 U.S.C. § 1915(b)(1). The Court will further direct the Acting Secretary of the CDCR, or his designee, to collect this initial filing fee only if sufficient funds are available in Plaintiff's account at the time this Order is executed. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay ... due to the lack of funds available to him when payment is ordered."). The remaining balance of the $350 total fee owed in this case must be collected by the agency having custody of the prisoner and forwarded to the Clerk of the Court pursuant to 28 U.S.C. § 1915(b)(2).

///

///

///

## II. Screening of Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)

### A. Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Williams v. King*, 875 F.3d 500, 502 (9th Cir. 2017) (discussing 28 U.S.C. § 1915(e)(2)) (citing *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Federal Rules of Civil Procedure 8 and 12(b)(6) require a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-

4

unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

    B.    Plaintiff's Allegations

    Plaintiff claims that on September 4, 2018, while he was housed in Building #14 on RJD's "C" Yard, he asked Correctional Officer Avila[2] for a cell move based on claims of "potential hostility" or a "violent outcome," but Avila denied his request. (Compl., ECF No. 1 at 3.) Plaintiff then claims a sleeper inmate[3] "came up," "interrupt[ed]," and demanded he "beat the C/O up." (*Id.*) When Plaintiff refused, the inmate "broke [his] jaw with a punch to the left … mand[ible]." *Id.* Plaintiff claims he then "ran away to avoid the conflict," and called "Man Down!" from inside his locked cell, but Avila simply "walked by to do count rounds," and ignored his pleas for medical attention. (*Id.*) Plaintiff concludes "that's what [he] g[o]t for arguing with the C/O," and alleges he remained "in pain in his cell" during the 3rd and 1st watch until "[f]inally, the 2d watch C/O allowed [him] to go to medical." (*Id.*)

    Plaintiff next claims he was "transported to Dr. Mud[4] in the morning with no medications" which had been "prescribed every 10 to 12 hours." (*Id.* at 4.) At some point, it appears Plaintiff was later escorted to an outside hospital "to get [his] wires cut," again "with no pain medication." (*Id.*) "[O]n the drive back," Plaintiff claims several unidentified transportation officers "did not take the fastes[t] ro[u]t[e]," and instead "drove down the beach checking out the girls with the music playing loudly," while "stop[p]ing fast then speeding up," which made him nauseous. (*Id.*) When Plaintiff

---

[2] Plaintiff does not include Officer Avila in either the caption of his Complaint, or in the portion of his Complaint where he is asked to identify and list the Defendants. *See* Compl., ECF No. at 1 at 1-2; *see also* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties[.]").

[3] A "sleeper" is prison slang for an inmate "who claims safety concerns in order to be placed in a special needs yard ('SNY') to carry out an assault." *Ibanez v. Miller*, No. CIV S-06-2668 KJM, 2011 WL 397644, at *1 (E.D. Cal. Feb. 3, 2011).

[4] Plaintiff also does not name Dr. Mud as a party-defendant. *See* Compl., ECF No. 1 at 1-2.

complained the officers were "joy riding," they "said they would beat [him] up if [he] file[d] a case civil[l]y," and would file a "false case" against him claiming assault. (*Id.*)

Plaintiff also claims to have called "Man Down" on some other unspecified occasion for "syadica [sic] pain in [his] legs" and lower back, but "was ignored and left in pain the [w]hole night." (*Id.*) He claims "they" "did nothing," but he "should have been given neuropathy medication, and has requested an "Ollsin" review[5] "for proof of how man[]y time the nurses have forced [him] to wait hours and even a day" for pain his pain medication. (*Id.*)

Finally, Plaintiff claims C/O Furguson, a "floor officer," "was hat[e]ful[,]" acted angrily toward him, used profanity, insulted his parents, and "at one point was scre[a]ming for [him] to come to … fi[gh]t[] with her," while Plaintiff was in "C.T.C." and seeking treatment for his broken jaw.[6] (*Id.* at 2.)

C.   42 U.S.C. § 1983

Section 1983 is a "vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frye*, 789 F.3d 1030, 1035-36 (9th Cir. 2015).

///

///

---

[5] "An *Olson* review is an administrative procedure which allows an inmate to review his central file." *Sapp v. Kimbrell*, 623 F.3d 813, 818 n.1 (9th Cir. 2010).

[6] C.T.C. is an abbreviation for a Correctional Treatment Center, or infirmary, where prisoners receive inpatient medical care. *See e.g., Chess v. Dovey,* 790 F.3d 961, 964 (9th Cir. 2015) (noting medical staff was allowed to dispense narcotic drugs to prisoners while in the prison's infirmary, also known as the Correctional Treatment Center or "CTC").

D.    Defendant RJD

First, to the extent Plaintiff includes "Donovan State Prison" as a party, his Complaint fails to state any claim upon which § 1983 relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); § 1915A(b)(1); *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

Richard J. Donovan State Prison is not a "person" subject to suit under § 1983. *See Hale v. State of Arizona*, 993 F.2d 1387, 1398-99 (9th Cir. 1993) (holding that a state department of corrections is an arm of the state, and thus, not a "person" within the meaning of § 1983); *Rojo v. R.J. Donovan State Prison*, No. 13CV2237 LAB BGS, 2014 WL 1653102, at *2 (S.D. Cal. Apr. 23, 2014) (sua sponte dismissing prisoner's § 1983 complaint against R.J. Donovan State Prison pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), (iii) and 28 U.S.C. § 1915A(b)(1) & (2)).

E.    Defendant C/O Furguson

As to the only individual person named as a Defendant, C/O Furguson, Plaintiff claims she was "hateful," used profanity, and "screamed" at him while he was in the CTC seeking treatment for his jaw. (*See* Compl., ECF No. 1 at 2.) "While such behavior is offensive, verbal epithets uttered by state actors—standing alone—do not violate a prisoner's constitutional rights. *Freeman v. Arpaio*, 125 F.3d 732, 738 (9th Cir. 1997) ("As for being subjected to abusive language ... [v]erbal harassment or abuse ... is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.") (citing *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (quotations omitted), *overruled in part on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008)); *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996), *amended on denial of rehr'g,* 135 F.3d 1318 (9th Cir. 1998) (holding verbal harassment, standing alone, does not violate the Eighth Amendment); *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004) (Eighth Amendment protections "do not necessarily extend to mere verbal sexual harassment."); *Minifield v. Butikofer*, 298 F. Supp. 2d 900, 903-04 (N.D. Cal. 2004). Such conduct, while unprofessional, and impertinent, does constitute the "unnecessary

and wanton infliction of pain" required to sustain an Eighth Amendment violation. *See, e.g., Blueford v. Prunty*, 108 F.3d 251, 256 (9th Cir. 1997) (affirming summary adjudication in favor of the prison officials where "the only arguably sexually harassing conduct... was verbal"); *Zavala v. Barnik*, 545 F. Supp. 2d 1051, 1059 (C.D. Cal. 2008) (finding comments about Plaintiff's racial, ethnic, or alienage background insufficient to state a claim), *aff'd sub nom. Zavala v. Bartnik*, 348 F. App'x 211 (9th Cir. 2009).

> F.    Eighth Amendment Claims – Unidentified C/Os and Nurses

As to all the remaining C/O's in Building 14's 1st & 3d watch, transportation officers, and nurses Plaintiff includes as Defendants, but fails to identify, he also fails to state an Eighth Amendment claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); § 1915A(b)(1); *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

Specifically, Plaintiff contends the C/Os failed to immediately summon medical care after he was attacked by another inmate, the transport officers took him on a "joy ride" when returning him from the hospital, and several nurses either denied or delayed pain medication on "multiple" occasions. (*See* Compl., ECF No. 1 at 2.)

To violate the Eighth Amendment however, Plaintiff must allege facts sufficient to show "the wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 475 U.S. 312, 347 (1981). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Thus, alleged deprivations under the Eighth Amendment "must involve more than ordinary lack of due care for the prisoner's interests or safety." *Id.* Mere negligence on the part of the prison official is not sufficient to establish liability—the official's conduct must have been wanton. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

To meet this high standard, a prisoner alleging an Eighth Amendment violation must plead facts sufficient to "satisfy both the objective and subjective components of a two-part test." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted). First, he must allege that prison officials deprived him of the "minimal civilized measure

of life's necessities." *Id.* (citation omitted). Second, he must allege the officials "acted with deliberate indifference in doing so." *Id.* (citation and internal quotation marks omitted). Prison officials act with "deliberate indifference ... only if [they are alleged to] know[ ] of and disregard[ ] an excessive risk to inmate health and safety." *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1187 (9th Cir. 2002) (citation and internal quotation marks omitted).

While Plaintiff's allegations of having sustained a broken jaw are generally sufficient to meet the Eighth Amendment's objective requirements, *see Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (a medical need is serious when the failure to treat it could result in significant injury or the unnecessary and wanton infliction of pain), he must further allege facts sufficient to show that each individual person he seeks to sue "kn[e]w of and disregard[ed] an excessive risk to [his] health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) (liability may be imposed on individual defendant under § 1983 only if plaintiff can show that defendant proximately caused deprivation of federally protected right).

With respect to his medical needs, Plaintiff has failed to allege that any individual RJD correctional officer or nurse knew his injuries posed a substantial risk of serious harm, and yet deliberately disregarded that risk by failing to take reasonable steps to abate it. *Farmer*, 511 U.S. at 837. Plaintiff claims generally that medical attention for his broken jaw and medication to treat his neuropathic pain was delayed, *see* Compl., ECF No. 1 at 3-5, but delay by itself does not constitute deliberate indifference. *See Hallett*, 296 F.3d at 745-46 (to establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful).

And with respect to the unidentified transport officers, Plaintiff's objections that they "did not take the fastes[t] ro[u]t[e]," played loud music, and "check[ed] out the girls" at the beach while driving him back to RJD, *see* Compl., ECF No. 1 at 4, do not plausibly suggest he was transported under conditions which posed a "substantial risk to his health or safety." *Farmer*, 511 U.S. at 837; *see also Rich v. Ahern*, No. 18-CV-06267-

EMC, 2019 WL 176789, at *2 (N.D. Cal. Jan. 11, 2019) (sua sponte dismissing Eighth Amendment claims of inmate injured during van transport to courthouse pursuant to 28 U.S.C. § 1915A because plaintiff failed to allege defendant-drivers acted with deliberate indifference to any "substantial risk to his health or safety.")

Thus, for all these reasons, the Court finds Plaintiff's Complaint fails to state any § 1983 claim upon which relief can be granted, and that it must be dismissed sua sponte and in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). *See Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

### G. Leave to Amend

Because Plaintiff is proceeding pro se, however, the Court having now provided him with "notice of the deficiencies in his complaint," will also grant him an opportunity to fix them. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)). However, the Court cautions Plaintiff that if he chooses to file an Amended Complaint, he must clearly identify, by name, each individual person he seeks to hold liable for violating his Eighth Amendment rights. Generally, Doe pleading is disfavored. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).[7] He must also be careful to allege facts showing the basis for liability for each individual Defendant. He should not refer to Defendants in groups, as he did in his original Complaint (*e.g.,* "C/Os, 3rd & 1st Watch Building 14," or "C/Os who drove the van"); rather, he must name each Defendant and link them to his claims by explaining what each person did or failed to do that caused him constitutional injury. *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) ("A plaintiff must allege facts, not

---

[7] Identifying each Defendant by name is also critical should Plaintiff's Amended Complaint survive initial screening and require service by the U.S. Marshal pursuant to 28 U.S.C. § 1915(d) and Fed. R. Civ. P. 4(c)(3). *See Walker v. Sumner*, 14 F.3d 1415, 1422 (9th Cir. 1994) (in order to properly effect service under Rule 4 in an IFP case, the plaintiff is required to "furnish the information necessary to identify the defendant."); *Finefeuiaki v. Maui Cmty. Corr. Ctr. Staff & Affiliates*, No. CV 18-00249 DKW-KJM, 2018 WL 3580764, at *6 (D. Haw. July 25, 2018) (noting that "[a]s a practical matter, the United States Marshal cannot serve a summons and complaint on an anonymous defendant.").

simply conclusions, t[o] show that [the Defendant] was personally involved in the deprivation of his civil rights."); *Estate of Brooks ex rel. Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999) ("Causation is, of course, a required element of a § 1983 claim.").

## III.    Conclusion and Orders

For the reasons discussed, the Court:

1.    **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 3).

2.    **ORDERS** the Acting Secretary of the CDCR, or his designee, to collect from Plaintiff's trust account the $40.33 initial filing fee assessed, *if those funds are available at the time this Order is executed*, and to forward whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in Plaintiff's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3.    **DIRECTS** the Clerk of the Court to serve a copy of this Order on Ralph Diaz, Acting Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

4.    **DISMISSES** Plaintiff's Complaint in its entirety for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

5.    **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file an Amended Complaint which cures the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir.

2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to file an Amended Complaint within 45 days, the Court will enter a final Order dismissing this civil action based both on his failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.


Dated: January 29, 2019

Hon. Anthony J. Battaglia
United States District Judge